O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| NOE M. CASTILLO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:13-CV-418 |
| | § | |
| CITY OF LA VILLA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

The Court now considers "Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint or in the Alternative Motion for More Definite Statement,"[1] filed by Hector Elizondo ("Elizondo") and the City of La Villa ("City"), the defendants in this action (collectively, "Defendants"). The Court also considers "Plaintiff, Noe M. Castillo, Jr.'s First Amended Unopposed Motion to Extend Time to Respond,"[2] filed by Noe M. Castillo, Jr. ("Plaintiff").

Because the Court **DENIES** the motion to extend time to respond, the motion to dismiss lacks a response. After considering the motion to dismiss, record, and relevant authorities, the Court **GRANTS** in part and **DENIES** in part the motion to dismiss.

**I.     The Amended Motion to Extend Time to Respond**

In the motion, Plaintiff writes, "It appears that the [previous] motion was denied because of the failure to specify the grounds for which a two-week extension was requested."[3] Appearances do not deceive in this instance. The Court wrote that Plaintiff recited "the good cause requirement without proffering any reason, good or otherwise, to find it met."[4] Plaintiff

---

[1] Dkt. No. 20.
[2] Dkt. Nos. 23, 24.
[3] Dkt. No. 24 at p. 2.
[4] Dkt. No. 22.

now attempts to explain this failure by writing that he had a status conference the same day he filed the motion, and thus "was not able to thoroughly clarify why a two week the motion for extension of time [sic][.]"[5] Indeed not.

Because Plaintiff now moves for an extension of time after the deadline, the Court applies the "excusable neglect" standard, rather than the comparatively lenient "good cause" standard. As excuse for his failure to timely file a response, Plaintiff's counsel notes that "his calendar did not permit him sufficient time,"[6] citing numerous obligations from February 10-21, 2014.[7] However, Plaintiff's counsel offers no reason why he did not meet the deadline to respond on *February 6, 2014*. In other words, Plaintiff's counsel mentions conflicts which occurred after February 6, but none which occurred before February 6. Once again, Plaintiff has failed to offer a single reason, excusable or otherwise, for his failure to meet the deadline.

Because counsel has failed to show his neglect of the deadline excusable, the Court **DENIES** the motion for extension of time.

## II. Background to the Motion to Dismiss

Plaintiff worked as a Water/Wastewater Operator for the City of La Villa.[8] In May 2011, the City of La Villa held elections for the posts of mayor and city commissioner.[9] Plaintiff campaigned for the losing slate of candidates, speaking at political rallies, contacting voters, staffing the polls, and working as a volunteer.[10]

The Monday after his candidates lost the election, Plaintiff's work-provided telephone and truck were taken away.[11] He was reprimanded for failure to calibrate a meter, even though he

---

[5] Dkt. No. 24 at p. 2, ¶2.4.
[6] *Id.*, ¶2.5.
[7] *Id.*, ¶2.6.
[8] Dkt. No. 18 at p. 3, ¶3.1.
[9] *Id.*, ¶3.2.
[10] *Id.* at pp. 3-4, ¶¶3.3.-3.5.
[11] *Id.* at p. 4, ¶3.5.

O

was not qualified to calibrate the meter.[12] He was reprimanded for failure to file a report, while the other individuals involved were not, even though standard procedure provided that another individual on a different shift would file the report.[13] Finally, he alone was fired, while other workers were reassigned.[14] Plaintiff asserts that he received no hearing before his termination, and that he did not receive a public hearing to clear his name afterward.[15]

Plaintiff brings suit pursuant to 42 U.S.C. § 1983 and § 1985(3), claiming violations of his right to free speech, freedom of association, right to petition the government, right to due process, and liberty to work.[16] Plaintiff seeks to recover actual damages, including injury to reputation, back pay, front pay, lost wages, retirement benefits, health coverage, future earnings, and mental anguish.[17] He seeks exemplary damages, as well as court costs, litigation expenses including expert fees, and attorneys' fees.[18]

Defendants now seek to dismiss Plaintiff's Fourteenth Amendment due process claims, arguing that Plaintiff has not identified a protected property interest, established that the process of termination lacked fundamental fairness, alleged a violation of a liberty interest. Defendants also argue that Plaintiff has not adequately alleged a conspiracy pursuant to § 1985(3).[19] Defendants also seek to dismiss Plaintiff's requests for exemplary damages, expert fees, and claims against Elizondo in his individual capacity. Before addressing the motion to dismiss directly, the Court will explain the relevant law.

### III. Standards for the Motion to Dismiss and Applicable Law

---

[12] *Id.*, ¶3.6.
[13] *Id.*, ¶¶3.7-3.8.
[14] Dkt. No. 18 at p. 4, ¶3.9.
[15] *Id.* at p. 5, ¶3.10.
[16] *Id.* at p. 5, ¶¶4.1-4.2; p. 6, ¶4.3; and p. 7, ¶4.7.
[17] *Id.* at pp. 10-11.
[18] *Id.* at pp. 12-13.
[19] Defendants do not dispute that Plaintiff has adequately alleged claims for free speech, freedom of association, and right to petition the government.

*Motions to Dismiss*

As a preliminary matter, the Court notes that Defendants should have filed a Rule 12(c) motion for judgment on the pleadings, instead of a Rule 12(b)(6) motion to dismiss. Before a party has answered a complaint, the proper mechanism for removing a claim from the Court's consideration is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[20] Here, however, Defendants filed an answer prior to removal.[21] Further, the motion is untimely. Rule 12(b) motions must be made prior to or with the answer, and responses to amended pleadings must be made within 14 days after service of the amended pleading,[22] but Defendants filed their motion to dismiss more than two months after the amended answer. Therefore, Defendants should have filed a Rule 12(c) motion for judgment on the pleadings. However, "[a]lthough the distinction should be noted, calling it dismissal or judgment on the pleadings is immaterial to the analysis herein."[23] The Court will rely upon Rule 12(b)(6) decisions in its analysis, since "Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same."[24]

To begin, "[t]he ultimate question in a [motion for judgment on the pleadings] is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."[25] To state a claim, a pleading merely must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."[26]

---

[20] FED.R.CIV.P. 12(b)(6).
[21] Dkt. No. 1 at p. 25.
[22] FED.R.CIV.P. 12(b), 15(a)(3).
[23] Quality Infusion Care Inc. v. Humana Health Plan of Texas Inc., 290 F. App'x 671, 674 n.3 (5th Cir. 2008).
[24] Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313 n.8 (5th Cir. 2002). *See also* Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008) ("A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).").
[25] Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter, 607 F.3d 1029, 1032 (5th Cir. 2010) (citation omitted).
[26] FED. R. CIV. P. 8(a).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[27] This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[28] The Court regards all such well-pleaded facts as true and views them in the light most favorable to the Plaintiffs.[29] However, pursuant to *Ashcroft v. Iqbal*,[30] the Court disregards from its analysis any conclusory allegations as not entitled to the assumption of truth.[31] The Court then undertakes the "context-specific" task of determining whether well-pleaded allegations give rise to an entitlement of relief to an extent that is plausible, rather than merely possible or conceivable.[32] The "plausibility" standard requires the complaint to state "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."[33]

*Due Process and a Property Interest*

"The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest."[34] Thus, before assessing a claim for deprivation of due process, a plaintiff must possess a property right. "To prevail on a claim of deprivation of employment without due process of law, plaintiff must show that he had a cognizable property interest in his continued employment and that the process he was afforded was insufficient to protect that interest."[35] Property rights in turn are established by state law, local law, or a

---

[27] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
[28] *Twombly*. at 555.
[29] *Id*.
[30] Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).
[31] *See id.* at 1949-50 (2009).
[32] *See id*.
[33] In re So. Scrap Material Co., 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly* at 556).
[34] DePree v. Saunders, 588 F.3d 282, 289 (5th Cir. 2009).
[35] Garcia v. Reeves Cnty., Tex., 32 F.3d 200, 203 (5th Cir. 1994) (summarizing Bishop v. Wood, 426 U.S. 341 (1976)). *See also* Blackwell v. Laque, 275 F. App'x 363, 368 (5th Cir. 2008) ("To establish a viable due process

contract.[36] "A property right in maintaining employment may not be deprived without due process. However, no process is due where no protected property interest exists. As the constitution does not itself create property interests, a plaintiff claiming deprivation of a property right must clearly establish existence of such a right. In ascertaining the existence of a property interest, we look to state law."[37]

Though such a property interest can arise in a variety of ways in the employment context, it is worth noting that "Texas law imposes a strong presumption in favor of at-will employment. Where a plaintiff relies on an employment policy, as opposed to an employment contract, to rebut the presumption of at-will employment, the proffered employment policy must contain explicit contractual terms altering the at-will relationship in a meaningful way (e.g., through an employment contract). Texas courts are reluctant to imply deviation from at-will employment from ambiguous employment policies."[38]

Once such an interest is established, the plaintiff is entitled to a certain minimum of due process. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."[39]

*Due Process and a Liberty Interest*

---

claim, Plaintiffs must show that they had a property interest in continued employment. There is no automatic property interest in continued government employment.").

[36] Cobb v. City of Harahan, 516 F. App'x 337, 340 (5th Cir. 2013) ("[I]n order to advance a due process claim in connection with his termination, [Cobb] must point to some state or local law, contract or understanding that creates a property interest in his continued employment.").

[37] Roberts v. Titus Cnty. Mem'l Hosp., 129 F. App'x 82, 85 (5th Cir. 2005) (internal citations omitted). *See also* Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").

[38] Roberts v. Titus Cnty. Mem'l Hosp., 129 F. App'x 82, 85 (5th Cir. 2005) (internal citations omitted).

[39] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

Liberty to gain employment is affected by stigmatizing charges made public, which create a badge of infamy. The mere fact of having been fired, however, does not affect a liberty interest. If stigmatizing charges are made public, then the employee is entitled to request, and to receive, a name-clearing hearing. "[T]he process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee."[40]

The elements of a claim for a deprivation of a liberty interest are clear and undisputed: "A constitutional violation exists only where a plaintiff can show: (1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not provided notice or an opportunity to be heard prior to her discharge; (5) that the charges were made public; (6) that she requested a hearing to clear her name; and (7) that the employer refused her request for a hearing. A plaintiff must allege facts to support each of these elements in order to state a claim."[41]

*Claims Pursuant to § 1985 (3)*

Section 1985(3) prohibits a conspiracy to deprive "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[42] The elements of this claim are similarly clear and undisputed: "To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or

---

[40] Rosenstein v. City of Dallas, Tex., 876 F.2d 392, 395 (5th Cir. 1989) opinion reinstated in part, 901 F.2d 61 (5th Cir. 1990).
[41] Higgenbotham v. Connatser, 420 F. App'x 466, 468 (5th Cir. 2011) (citing Hughes v. City of Garland, 204 F.3d 223, 226 (5th Cir.2000)).
[42] 42 U.S.C.A. § 1985(3).

O

privilege of a citizen of the United States. Additionally, the conspiracy must also have a racially based animus."[43]

### IV. Motion to Dismiss Due Process Claims Pursuant to § 1983

Having reviewed the facts and applicable law, the Court will assess the sufficiency of Plaintiff's claims of deprivation of a property interest in his continued employment, of lack of due process in his employment termination, and of a deprivation of a liberty interest in his reputation.

*Section 1983 and Employment Interest*

Defendants argue that Plaintiff has failed to adequately allege a violation of due process, because Plaintiff has not proved he possessed a property interest in his continued employment, and because Plaintiff has not proved the method of his termination lacked due process.

Taking the second argument first, Defendants write that Plaintiff must "show that the process used by Defendants somehow lacked fundamental fairness . . . Plaintiff has not identified any process about which he complains . . . ." Like the plaintiff in *Garcia v. Reeves County*,[44] Plaintiff contends that he was terminated without any due process at all: "Plaintiff was terminated without an opportunity to be heard . . . Plaintiff was afforded an audience with the La Villa City Commission after his termination . . . ."[45] And like the defendants in *Garcia*, Defendants contend that Plaintiff was not due any process, because he lacked a property interest in his continued employment.

Defendants correctly point out that "In order for the alleged right to be legally enforceable as to constitute a property right, Plaintiff would need proof that the governing body

---

[43] Lockett v. New Orleans City, 607 F.3d 992, 1002 (5th Cir. 2010) (internal citations omitted).
[44] Garcia v. Reeves Cnty., Tex., 32 F.3d 200, 202 (5th Cir. 1994) ("Appellant does not dispute that Appellees were afforded no due process when they lost their jobs. Appellant's position is that they were not due any process.").
[45] Dkt. No. 18 at p. 5, ¶3.10.

O

itself, *i.e.*, the City Commission, somehow approved that right."[46] The method of approving that right need not be left with a mysterious "somehow." It would simply be any mode of employment other than at-will employment, as evidenced by an employment policy or mutual understanding such as a contract.

Of course, to state a claim, Plaintiff need not *prove* he possessed a property right in his employment. To overcome a motion to dismiss, Plaintiff merely need *allege* that he possessed such a right. Plaintiff comes closest to alleging this when he writes: "The Plaintiff also had a protected due process property interest in his continued employment . . . ."[47] Unfortunately, this is a textbook example of a legal conclusion, rather than an asserted fact which supports the legal conclusion. Legal conclusions are not entitled to a presumption of truth; rather, the Court excludes such conclusory statements from the analysis. Excluding this lone statement, then, Plaintiff has merely pled that he was employed, and then fired. Thus, Plaintiff has failed to allege any fact supporting the existence of a protected due process property interest.

As a result, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted, and **DISMSSES** Plaintiff's claim for lack of due process in his employment termination.

*Section 1983 and Liberty Interest*

The Court will now assess whether Plaintiff has adequately alleged Defendants violated his liberty to work by making stigmatizing charges public. Plaintiff writes, "Comments were made publicly casting shadows over the reputation of the Plaintiff as well as inferring acts of dishonesty and incompetency on him. The Plaintiff was never provided a meaningful public forum to clear his name nor an opportunity to cross examine his accusers . . . Defendant

---

[46] Dkt. No. 20 at p. 4.
[47] Dkt. No. 18 at p. 9, ¶4.15.

O

Elizondo, using the authority and political weight of his office, abused his public trust to cast aspersions and defame Plaintiff . . . ."[48]

Combining these statements with the other portions of the complaint, Plaintiff has alleged (1) that he was discharged; (2) that stigmatizing charges were made against him in connection with the discharge; (4) that he was not provided an opportunity to be heard prior to his discharge; and (5) that the charges were made public. Plaintiff does not explicitly state (3) that the charges were false, but his denial of the charges is implicit in the pleading.

However, Plaintiff has not alleged the sixth and seventh elements of the claim: that he requested a name-clearing hearing and that his employer refused it. Again, Plaintiff most closely approaches the standard for pleading when he writes, "Although Plaintiff was afforded an audience with the La Villa City Commission after his termination, he was denied a public forum for his name clearing opportunity."[49] By writing that he "was denied a public forum," Plaintiff implies (6) that he requested a public forum, but again alleges no supporting facts. When did he request this more public forum, in what way, of whom, and how was the request refused? Further, by contrasting this audience with a public forum, Plaintiff implies (7) that the audience with the La Villa City Commission was not a public forum, but he alleges no fact to support this implication. Was the Commission meeting closed to the public? Was Plaintiff the only person there, apart from the members of the City Commission?

Once again, Plaintiff has pled conclusory allegations, not entitled to the presumption of truth. Even if the Court generously construes Plaintiff's vague implications as pleading the sixth and seventh elements of a liberty interest deprivation, Plaintiff has failed to state more than legal

---

[48] Dkt. No. 18 at p. 6, ¶4.3.
[49] Dkt. No. 18 at p. 5, ¶3.10.

conclusions. As a result, the Court **DISMISSES** Plaintiff's claim for a deprivation of his liberty interest.

## V. Motion to Dismiss Conspiracy Claims Pursuant to § 1985(3)

Defendants argue that § 1985(3) does not apply to this case, and that Plaintiff has failed to adequately allege a conspiracy.[50]

Following closely Plaintiff's random walk through the elements of this cause of action, the Court finds two possible conspiracy allegations. First, Plaintiff writes: "Defendant Elizondo, in collusion and conspiracy with the City, Joe Contreras, Mario Lopez, Manuel Hinojosa and Noel Bernal, denied the Plaintiff due process for his protected liberty interests."[51] Then, Plaintiff writes:

> "Plaintiff asserts a cause of action against the Defendants in their individual and official capacities, for conspiracy to violate his civil rights. Defendants conspired to illegally commit such acts that caused injury to Plaintiff. Said actions were an attempt by Defendants to accomplish the deprivation of Plaintiff's civil and constitutional rights and privileges under the equal protection of the laws by taking actions in furtherance of their attempts to deprive and infringe upon Plaintiff's individual and respective rights to free speech, freedom of association, and right to privacy."[52]

Plaintiff has failed to state a claim, for three main reasons. First, the Fifth Circuit has held that employees of the same governmental agency constitute a single legal entity and thus cannot conspire among themselves.[53] Second, the Fifth Circuit insists upon racial animus, and has never recognized any other protected class under § 1985(3).[54] Third, Plaintiff asserts the legal

---

[50] Dkt. No. 20 at pp. 6-7.
[51] Dkt. No. 18 at p. 6, ¶4.3.
[52] *Id*. at p.9, ¶4.16.
[53] *See* Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994); Swilley v. City of Houston, 457 F. App'x 400, 404 (5th Cir. 2012) ("The City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves."). *See also* Marceaux v. Lafayette City-Parish Consol. Gov't, 921 F. Supp. 2d 605, 643 (W.D. La. 2013), appeal dismissed (May 14, 2013).
[54] *See* Newberry v. E. Texas State Univ., 161 F.3d 276, 281 n.2 (5th Cir. 1998) ("In Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754 (5th Cir.1987), we held that to state a claim under § 1985(3), plaintiffs must allege that they are

conclusion of conspiracy without alleging facts to support that conclusion, once again reciting the elements of the claim without factual support.

Accordingly, the Court **DISMISSES** Plaintiff's claim for conspiracy to violate his civil rights.

### VI. Motion to Bar Punitive Damages and Expert Fees

Defendants write that exemplary or punitive damages are "barred by state and federal law."[55] While Defendants do not explain how state law could bar recovery in federal court on a federal claim, federal law permits plaintiffs to recover only compensatory damages, not punitive damages, from municipalities.[56] Because Plaintiff may not recover punitive damages from the City, the Court **DISMISSES** this claim as against the City.

Moreover, the text of § 1988(c) clearly allows the award of expert fees only for actions brought pursuant to § 1981. "In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."[57] Because Plaintiff does not bring suit pursuant to § 1981, he cannot recover expert fees. The Court therefore **DISMISSES** the claim for expert fees.

### VII. Motion to Dismiss Claims Against Elizondo in His Individual Capacity

Defendants claim "Plaintiff . . . has identified no action even allegedly taken by this Defendant [Elizondo] in his individual capacity. Plaintiff therefore appears to complain only of Defendant Elizondo's actions in his official capacity."[58] Defendants' use of "individual capacity"

---

victims of a race-based conspiracy. . . Deubert remains the law in this circuit."); *see also* Bryan v. City of Madison, Miss., 213 F.3d 267, 276 (5th Cir. 2000) ("In this circuit, we require an allegation of a race-based conspiracy.").
[55] Dkt. No. 20 at p. 7.
[56] *See* City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267 (1981) ("Damages awarded for punitive purposes, therefore, are not sensibly assessed against the governmental entity itself.").
[57] 42 U.S.C.A. § 1988.
[58] Dkt. No. 20 at p. 8.

O

remains unclear, but the Court infers that Defendants mean Defendant Elizondo could only be sued in his individual capacity if he had acted for a private aim and in a private manner.

In fact, the law establishes precisely the opposite. If Plaintiff had alleged Elizondo acted in a private capacity and not as the mayor, then Plaintiff could *not* sue Elizondo under § 1983. "It is well established that the act of one who is a state officer, not taken by virtue of or clothed with his state authority, will not be considered as done under color of state law simply because the individual, although pursuing private aims, happens to be a state officer."[59]

As the Court has reviewed above, Plaintiff alleges Elizondo, acting in his capacity as the newly elected mayor, fired him for exercising his First Amendment rights. In a suit against an official in his individual capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."[60] Plaintiff has therefore pled a personal capacity suit against Elizondo.

Thus, the Court **DENIES** the motion to dismiss Plaintiff's claims against Elizondo.

## VIII.  Holding

After **DENYING** the motion for extension of time, the Court **GRANTS** the motion to dismiss as to Plaintiff's due process and liberty interest claims, and as to Plaintiff's request for punitive damages and expert fees, but **DENIES** the motion to dismiss as to Plaintiff's suit against Elizondo in his individual capacity.

IT IS SO ORDERED.

DONE this 9th day of April, 2014, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[59] Webb v. Morella, 522 F. App'x 238, 242 (5th Cir. 2013).
[60] Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009).